UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-- ------------------------------------------------------------ x

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| PAUL F. WALLACE, et al., | : | |
| | : | |
| Debtors. | : | Chapter 11 |
| | : | Case Nos. 10-22998, 10-22999, |
| ------------------------------------------------------------ x | | 10-23000, 10-23001, 10-23002 (RDD) |
| PAUL F. WALLACE, A&T HOLDING CORP., | : | |
| BEN FRANKLIN SERVICES CORP., | : | Jointly Administered |
| MARTINDALE CORPORATION and MOA- | : | |
| CODY, L.L.C., | : | Adversary Proceeding |
| | : | No. 10-08381 (RDD) |
| Plaintiffs, | : | |
| | : | Return Date: December 8, 2010 |
| - against - | : | |
| | : | |
| BSC PROPERTIES, INC., CCJ HOLDING | : | |
| CORP., CLEAR SKY ASSOCIATES LLC, | : | |
| FRANK W. CUIFFO, PRESTON ASSOCIATES | : | |
| LLC, RONALD P. STEWART and RS | : | |
| HOSPITALITY LLC, | : | |
| | : | |
| Defendants. | : | |

- ------------------------------------------------------------ x

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas, 25th Floor
New York, New York 10020
Telephone: (212) 307-5500
Facsimile: (212) 307-5598

Counsel for Defendants

<u>Of Counsel:</u>
Lawrence H. Cooke II
Edward A. Smith
David N. Cinotti

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ iii

BACKGROUND ...................................................................................................... 1

The Wallace Web ................................................................................................... 2

The Relevant Properties ......................................................................................... 4

Plaintiffs' Causes of Action .................................................................................... 8

ARGUMENT ........................................................................................................ 12

I.   Plaintiffs Lack Standing to Assert Claims Based on the Sales of the CDA, Cody, and Louisville Super 8 Motels .................................................................................... 12

    A.   Plaintiffs Lack Standing Under Federal Law ................................................. 13

    B.   Plaintiffs Lack Standing Under State Law ..................................................... 14

        1.   Plaintiffs Lack Property Rights Under State Law to Bring Contract Claims Based on the CDA, Cody, and Louisville Sale Agreements (Claims 2, 5) ...................... 15

            (a)   Plaintiffs Are Not Third-Party Beneficiaries Under the Cody, CDA, and Louisville Sale Agreements .................................................................. 15

            (b)   Plaintiffs Cannot Bring Derivative Claims on Behalf of Motels of America L.L.C. or MOA Properties ..................................................................... 17

            (c)   Plaintiffs Cannot Pierce the Corporate Veil of Multiple Entities to Assert the Contract Claims ........................................................................ 19

        2.   Plaintiffs Lack Standing to Assert Claims in Equity or Tort Based on the CDA, Cody, and Louisville Sales Transactions (Claims 4, 6, 11-14, 16-17) .................. 20

II.   Whether or Not Plaintiffs Have Standing, the Complaint Fails to State a Claim .................. 22

    A.   Plaintiffs Fail to State a "Claim" for an Injunction (Claim 1) ........................................ 22

    B.   Plaintiffs Fail to State a Claim for Promissory Estoppel (Claim 4) ................................. 23

    C.   Plaintiffs Fail to State a Claim for Breach of the Duties of Good Faith and Fair Dealing (Claim 5) ......................................................................................... 27

    D.   Plaintiffs Fail to State a Claim for Unjust Enrichment (Claim 6) .................................... 27

    E.   Plaintiffs Fail to State a Claim for Equitable Subordination (Claim 7) ........................... 28

    F.   Plaintiffs Fail to State a Claim for Fraudulent Transfer or Conveyance, Preferential Transfer, or Turnover of Estate Property (Claims 8-10, 17) ......................................... 29

        1.   Relevant Statutory Provisions ............................................................................. 29

        2.   Property of the Estates ......................................................................................... 31

      3.    Pleading Requirements ........................................................................... 32

G.   Plaintiffs Fail to State a Claim for Legal Malpractice (Claim 11) ................................... 34

H.   Plaintiffs Fail to State a Claim for an Accounting (Claim 12) ....................................... 35

I.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duties (Claim 13) .................. 36

J.    Plaintiffs Fail to State a Claim for Fraud (Claim 14)...................................................... 38

K.   Plaintiffs Fail to State a Claim for an Order Declaring That Defendants Have No Claims or Liens Against Plaintiffs' or Their Affiliates' Property (Claim 15) ............................ 38

L.    Plaintiffs Fail to State a Claim for Conversion (Claim 16) ............................................ 39

M.  Plaintiffs Fail to State a Claim for Constructive Trust (Claim 18) ................................ 40

N.   Plaintiffs Fail to State Any Claims Against BSC Properties, Inc., CCJ, or Preston ....... 40

CONCLUSION ....................................................................................................................... 41

# TABLE OF AUTHORITIES

Page

## CASES

Accurate Copy Serv. of Am., Inc. v. Fisk Bldg. Assocs. L.L.C., 899 N.Y.S.2d 157 (App. Div. 2010) .................................................................................................. 28

Alexander & Alexander of N.Y., Inc. v. Fritzen, 503 N.E.2d 102 (N.Y. 1986) ........................... 21

AllGood Entm't, Inc. v. Dileo Entm't & Touring, Inc., No. 09 Civ 5377 (HB), 2010 WL 2606042 (S.D.N.Y. June 29, 2010) ....................................................................... 20, 23

All-Tech Telecom, Inc. v. Amway Corp., 174 F.3d 862 (7th Cir. 1999) ..................................... 25

Amusement Indus., Inc. v. Stern, 693 F. Supp. 2d 327 (S.D.N.Y. 2010) .................................... 21

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) ......................................................... 27, 32, 35

Bianco v. Erkins (In re Gaston), 243 F.3d 599 (2d Cir. 2001) .................................... 17

Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Grp., Inc.), 336 F.3d 94 (2d Cir. 2003) .................................................................................................. 15

Brink's Ltd. v. S. African Airways, 93 F.3d 1022 (2d Cir. 1996) ................................. 23

Bross Utils. Serv. Corp. v. Aboubshait, 618 F. Supp. 1442 (S.D.N.Y. 1985) ............................ 19

Butner v. United States, 440 U.S. 48 (1979) ...................................................... 13

Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d 190 (N.Y. 1987) ........................... 24

Colavito v. N.Y. Organ Donor Network, Inc., 860 N.E.2d 713 (N.Y. 2006) .............................. 39

Commonwealth ex rel. Corbett v. Citizens Alliance for Better Neighborhoods, Inc., 983 A.2d 1274 (Pa. Commw. Ct. 2009) ..................................................................... 37

Cooney v. Osgood Mach., Inc., 612 N.E.2d 277 (N.Y. 1993) ....................................... 20

Cordero Mining Co. v. U.S. Fid. & Guarantee Ins. Co., 67 P.3d 616 (Wyo. 2003) ..................... 16

Crosse v. BCBSD, Inc., 836 A.2d 492 (Del. 2003) ................................................. 19

DaimlerChrysler Corp. v. Cuno, 547 U.S. 332 (2006) .............................................. 22

DeBlasio v. Merrill Lynch & Co., No. 07 Civ 318 (RJS), 2009 WL 2242605 (S.D.N.Y. Jul. 27, 2009) ............................................................................................. 25, 27, 28

Delphi Corp. v. Appaloosa Mgmt. L.P (In re Delphi Corp.), No. 05-44481 (RDD), 2008 WL 3486615 (Bankr. S.D.N.Y. Aug. 11, 2008) ..................................................................... 23, 34

DiTolla v. Doral Dental IPA of N.Y., LLC, 469 F.3d 271 (2d Cir. 2006) .................................. 35

Feldman v. Trs. of Beck Indus. (In re Beck Indus., Inc.), 479 F.2d 410 (2d Cir. 1973) .............. 13

Fin. One Pub. Co. v. Lehman Bros. Special Fin., 414 F.3d 325 (2d Cir. 2005)........................... 20

Fletcher v. Atex, Inc., 68 F.3d 1451 (2d Cir. 1995)................................................................... 19

Found Ventures, LLC v. F2G, Ltd., No. 08 Civ. 10066 (PKL), 2010 WL 3187294 (S.D.N.Y. Aug. 11, 2010) ................................................................................................................. 27, 28

Frota v. Prudential-Bache Secs., Inc., 639 F. Supp. 1186 (S.D.N.Y. 1986)................................ 25

Garelick v. Carmel, 529 N.Y.S.2d 126 (2d Dep't 1988) ........................................................... 39

Haliburton Energy Servs., Inc. v. Gunter, 167 P.3d 645 (Wyo. 2007)....................................... 21

Henneberry v. Sumitomo Corp. of Am., 532 F. Supp. 2d 523 (S.D.N.Y. 2007)......................... 24

Hirsch v. Arthur Anderson & Co., 72 F.3d 1085 (2d Cir. 1995)................................................ 14

In re CPF Acquisition Co., 682 N.Y.S.2d 3 (App. Div. 1998) ................................................... 17

Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006 (2d Cir. 1986)................................................... 18

Kane v. Johns-Manville Corp., 843 F.2d 636 (2d Cir. 1988) ............................................... 14, 23

Kermanshah v. Kermanshah, 580 F. Supp. 2d 247 (S.D.N.Y. 2008) ........................................ 19

Latuszewski v. Valic Fin. Advisors, Inc., 2007 WL 4462739 (W.D. Pa. Dec. 19, 2007)........... 38

Lekki Capital Corp. v. Auto. Data Processing, Inc., No. 01 Civ 7421 (LMM), 2002 WL 987147 (S.D.N.Y. May 14, 2002).................................................................................................... 22

Lisa, S.A. v. Mayorga, No. 2571-VCL, 2009 WL 1846308 (Del. Ch. June 22, 2009) ............... 21

Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 173 (2d Cir. 2005) .................................................................................................................................. 15

Mills v. Polar Molecular Corp., 12 F.3d 1170 (2d Cir. 1993) .............................................. 26, 38

Musso v. Ostashko, 468 F.3d 99 (2d Cir. 2006) ....................................................................... 31

Nat'l Oil Well Maint. Co. v. Fortune Oil & Gas, Inc., No. 02 Civ. 7666 (LBS), 2005 WL 1123735 (S.D.N.Y. May 11, 2005)................................................................................ 20, 23

Nordwind v. Rowland, 584 F.3d 420 (2d Cir. 2009) .................................................... 36

O'Connell v. Arthur Anderson LLP (In re AlphaStar Ins. Grp. Ltd.), 383 B.R. 231 (Bankr. S.D.N.Y. 2008) ............................................................................................................ 29

Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147 (2d Cir. 2003)....................................................................................... 15

Official Comm. of Unsecured Creditors of Hydrogen, L.L.C. v. Blomen (In re Hydrogen, L.L.C.), 431 B.R. 337 (Bankr. S.D.N.Y. 2010)......................................... 20, 21, 28, 29, 35, 36

Partout v. Harper, 183 P.3d 771 (Idaho 2008) ............................................................... 16

Patane v. Clark, 508 F.3d 106 (2d Cir. 2007) ................................................................ 16

Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103 (2d Cir. 2009) ......................... 16

Presnell Constr. Managers, Inc. v. EH Constr., LLC, 134 S.W.3d 575 (Ky. 2004) ..................... 17

Priestley v. Priestley, 949 S.W.2d 594 (Ky. 1997) ....................................................... 21

Quadrille Bus. Sys. v. Ky. Cattlemen's Ass'n, 242 S.W.3d 359 (Ky. Ct. App. 2007)................. 19

Reuben H. Donnelly Corp. v. Mark I Mktg. Corp., 893 F. Supp. 285 (S.D.N.Y. 1995).............. 22

Rocky City Sound, Inc. v. Bashian & Farber, LLP, 903 N.Y.S.2d 517 (App. Div. 2010)........... 36

Rombach v. Chang, 355 F.3d 164 (2d Cir. 2004)........................................... 25, 29, 39

Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer, 867 N.E.2d 385 (N.Y. 2007)................... 34

Smith v. New Line Cinema, No. 03 Civ. 5274 (DC), 2004 WL 2049232 (S.D.N.Y. Sept. 13, 2004) ......................................................................................................................... 22

St. Paul Fire & Marine Ins. Co. v. PepsiCo, 884 F.2d 688 (2d Cir. 1989) ................... 14

Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406 (2d Cir. 2008)......................... 4

Trenwick Am. Litig. Trust v. Ernst & Young L.L.P., 906 A.2d 168 (Del. Ch. 2006) ................ 37

Vaughan v. Air Line Pilots Ass'n, Int'l, 604 F.3d 703 (2d Cir. 2010) ......................... 26

Warth v. Seldin, 422 U.S. 490 (1975)............................................................................ 13

White v. Unigard Mut. Ins. Co., 730 P.2d 1014 (Idaho 1986) ..................................... 19

Wilder v. Cody Country Chamber of Commerce, 868 P.2d 211 (Wyo. 1994) ............. 19

Wing v. Martin, 688 P.2d 1172 (Idaho 1984)................................................................ 21

**STATUTES**

11 U.S.C. § 1107 .................................................................................................. 30

11 U.S.C. § 363(b)(1) .......................................................................................... 30

11 U.S.C. § 502(d) ............................................................................................... 39

11 U.S.C. § 541(a)(1) .......................................................................................... 29

11 U.S.C. § 542 ................................................................................................... 31

11 U.S.C. § 542(a) ............................................................................................... 30

11 U.S.C. § 544(b)(1) .......................................................................................... 30

11 U.S.C. § 547(b)(1)-(5) ......................................................................... 30, 31, 33

11 U.S.C. § 548(a) ............................................................................................... 31

11 U.S.C. § 548(a)(1)(B)(ii) ............................................................................... 32

11 U.S.C.§ 550(a) ................................................................................................ 31

6 Del. Code Ann., tit. 6, § 18-1001 ..................................................................... 18

6 Del. Code Ann., tit. 6, § 18-1002 ..................................................................... 18

N.Y. Debt. & Cred. Law § 273 ..................................................................... 30, 33

**RULES**

Fed. R. Bankr. P. 7008 ........................................................................................ 26

Fed. R. Bankr. P. 7009 ........................................................................................ 25

Fed. R. Bankr. P. 7023.1 ..................................................................................... 18

Fed. R. Civ. P. 23.1 ............................................................................................. 18

Fed. R. Civ. P. 8(a) ................................................................................... 26, 32, 41

Fed. R. Civ. P. 9(b)…………………………………………………………………passim

Fed. R. Evid. 201(b)............................................................................................... 4

Defendants respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the complaint in this adversary proceeding. The complaint should be dismissed for: (1) lack of jurisdiction because Plaintiffs do not have standing to bring many of the claims, and (2) failure to state a claim because Plaintiffs' legal theories are fatally flawed and the claims inadequately pleaded.

The Court lacks jurisdiction over many of the claims in the complaint because Plaintiffs seek to recover damages from the sales of three hotels in which they have no legal interest. The hotels were sold by legally separate entities that have not filed for bankruptcy, are not parties to this adversary proceeding, and are now owned by one of the defendants. Plaintiffs lack standing to raise claims on behalf of these entities.

In addition, the complaint fails to state a claim for numerous reasons. Most notably, Plaintiffs base the majority of their claims on purported fraudulent misrepresentations without specifying what was said, by whom, to whom, when, or how any statements were false. The complaint also impermissibly lumps together all defendants without alleging the role each played in the purported fraud.

## BACKGROUND

To understand Plaintiffs' allegations in this adversary proceeding, the Court must be familiar with the intricate web of entities that Plaintiff Paul F. Wallace established to insulate himself from personal liability in his various business dealings. Wallace and his related companies that are plaintiffs in this adversary proceeding now seek to use their bankruptcy

petitions to collapse the legal divisions between these companies and assert claims to property in which they have no cognizable interest.[1]

**<u>The Wallace Web</u>**

Plaintiffs Paul F. Wallace, A&T Holding Corp. ("A&T"), Ben Franklin Services Corp. ("BFSC"), Martindale Corporation ("Martindale"), and MOA-Cody L.L.C. ("MOA-Cody") filed voluntary petitions for bankruptcy on May 20, 2010. Compl. ¶ 4. Wallace is the sole shareholder of BFSC and Martindale, both Delaware corporations. Corporate Ownership Statement Pursuant to Rule 1007(a), <u>In re Ben Franklin Services Corp.</u>, No. 10-23000 (June 2, 2010), ECF No. 10; Corporate Ownership Statement Pursuant to Rule 1007(a), <u>In re Martindale Corp.</u>, No. 10-23001 (June 2, 2010), ECF No. 11. BFSC is, in turn, the sole member of MOA-Cody, a Delaware limited liability company. Corporate Ownership Statement Pursuant to Rule 1007(a), <u>In re MOA-Cody, L.L.C.</u>, No. 10-23002 (June 2, 2010), ECF No. 11. Martindale is the sole shareholder of A&T, a Delaware corporation. Corporate Ownership Statement Pursuant to Rule 1007(a), <u>In re A&T Holding Corp.</u>, No. 10-22999 (June 2, 2010), ECF No. 10. For the Court's reference, an organizational chart showing the relationship among Plaintiffs and relevant nondebtor entities discussed below is attached as Exhibit A to the Declaration of Frank W. Cuiffo ("Cuiffo Decl.").

Although not parties to the underlying Chapter 11 cases or this adversary proceeding, a number of entities that are related to, though legally separate from, Plaintiffs are relevant to this motion. Martindale owns 80% of the stock in The Broadstone Group, Inc. ("Broadstone"). Compl. ¶ 20. Broadstone owns 90% of the shares of MOA Hospitality, Inc. ("MOA Hospitality"). <u>Id.</u> ¶ 23. MOA Hospitality is the sole shareholder of MOA-NR Corp., MOA

---

[1] Defendants neither admit nor deny the allegations in the complaint but assume the truth of those allegations for purposes of this motion.

Investor Corp., and MOA Star Corp.  See Cuiffo Decl. Ex. A.  Until March 31, 2010, (1) MOA Hospitality was the sole member of MOA Properties L.L.C. ("MOA Properties"), and (2) MOA Investor Corp. and MOA Start Corp. were the sole members of Motels of America LLC ("MOA LLC").  See Cuiffo Decl. ¶ 10.

On March 31, 2010, Defendant CCJ Holding Corp. ("CCJ") acquired 100% of the membership interests in MOA Properties and MOA LLC from nonparty U.S. Bank N.A. as trustee (the "Trustee").  Compl. ¶ 38.  The Trustee, on behalf of numerous holders of senior subordinated notes issued by MOA Hospitality, filed an action against MOA Hospitality and MOA LLC in New York Supreme Court (the "Trustee Action").  See Cuiffo Decl. Ex. B, Compl., U.S. Bank N.A. v. MOA Hospitality, Inc., No. 07/601686 (N.Y. Supr. Ct. May 18, 2007).  Pursuant to a settlement agreement resulting from the Trustee Action, the Trustee was granted, among other things, (1) a pledge of a wrap note encumbering a Super 8 Motel located in Jackson, Wyoming (the "Jackson Wrap Note" and the "Jackson Super 8"), which are discussed in more detail below; (2) a pledge of 100% of the membership interests in MOA LLC and MOA Properties; and (3) the right to receive the net sale proceeds derived from any sale of the three Super 8 Motels located in Coeur d'Alene, Idaho (the "CDA Super 8"), Cody, Wyoming (the "Cody Super 8"), and Louisville, Kentucky (the "Louisville Super 8") (together, the "Trustee's Right to Sale Proceeds").  See Compl. ¶¶ 27-28; Cuiffo Decl. Ex. C, Settlement and Forbearance Agreement ¶¶ 5, 10, Feb. 13, 2009.  In addition, the Trustee obtained a judgment against MOA Hospitality for over $12,000,000.  See Cuiffo Decl. Ex. D, Order for Judgment and Consent,

<u>U.S. Bank N.A. v. MOA Hospitality, Inc.</u> (Mar. 3, 2009); <u>id.</u> Ex. E, Affidavit for Judgment by Confession ¶ 4, <u>U.S. Bank N.A. v. MOA Hospitality, Inc.</u> (Feb. 18, 2009).[2]

## **The Relevant Properties**

Plaintiffs' claims are based on transactions involving six hotels: (1) the CDA Super 8; (2) the Cody Super 8; (3) the Louisville Super 8; (4) the Jackson Super 8; (5) "The Cody," located in Cody, Wyoming; and (6) "The Ambrose," located in Santa Monica, California. The CDA Super 8 and the Cody Super 8 are encumbered by a first mortgage made in favor of Countrywide Commercial Real Estate Finance, Inc. (the "Countrywide Mortgage"), Compl. ¶ 29, and the Trustee's Right to Sale Proceeds. At the time of the sale, the Jackson Super 8 was encumbered by the Countrywide Mortgage and the Jackson Wrap Note, which was held by MOA N/R Corp. until March 31, 2010, when Defendant CCJ acquired the Jackson Wrap Note, <u>see id.</u>¶¶ 27. The principal balance of the Countrywide Mortgage is approximately $11,120,370. <u>Id.</u> ¶ 30. The principal balance of the Jackson Wrap Note is $8,500,000. <u>Id.</u> ¶ 26.

Despite its wide-ranging allegations, the crux of the complaint focuses on the "October 2009 Transaction," in which Defendant Clear Sky Associates LLC ("Clear Sky") acquired the CDA and Cody Super 8s from nonparty MOA LLC, Clear Sky acquired the Jackson Super 8 from MOA-Cody, and Defendant Preston Associates LLC ("Preston Associates") acquired the Louisville Super 8 from nonparty MOA Properties.

*CDA Super 8*

Pursuant to an agreement of sale dated October 27, 2009 (the "CDA Sale Agreement"), MOA LLC—which is neither in bankruptcy nor a plaintiff in this adversary proceeding and

---

[2] The Court may take judicial notice of these documents. <u>See</u> <u>Staehr v. Hartford Fin. Servs. Grp., Inc.</u>, 547 F.3d 406, 425 (2d Cir. 2008) (holding that courts may consider judicially noticeable documents on a motion to dismiss); Fed. R. Evid. 201(b) (providing that courts may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

whose sole member is now Defendant CCJ—sold the CDA Super 8, encumbered by the Countrywide Mortgage and the Trustee's Right to Sale Proceeds, to Clear Sky for $107,718.26. See Compl. ¶¶ 38, 42. The CDA Sale Agreement contains a choice-of-law clause that states: "This Agreement shall be governed by the laws of the State of Wyoming, without cognizance to conflicts of law rules." Cuiffo Decl. Ex. F, CDA Sale Agreement, Oct. 27, 2009, Art. 12.7.

*Cody Super 8*

Pursuant to an agreement of sale dated October 27, 2009 ("the Cody Sale Agreement"), MOA LLC sold the Cody Super 8, as encumbered by the Countrywide Mortgage and the Trustee's Right to Sale Proceeds, to Clear Sky for $716,499.33. See Compl. ¶ 41. The Cody Sale Agreement also contains a Wyoming choice-of-law clause. See Cuiffo Decl. Ex. G, Cody Sale Agreement, Oct. 27, 2009, Art. 12.7.

*Louisville Super 8*

Defendant Preston Associates, of which Defendants Stewart and Cuiffo are members, purchased the Louisville Super 8 in October 2009 from MOA Properties, which is neither in bankruptcy nor a plaintiff in this adversary proceeding and whose sole member is Defendant CCJ. Compl. ¶¶ 38, 46; Cuiffo Decl. ¶ 10. The Louisville Super 8 is subject to a first mortgage held by Kennedy Funding, Inc. and a second mortgage held by Stewart, and was encumbered by the Trustee's Right to Sale Proceeds. Compl. ¶ 46.

*Jackson Super 8*

In September 2008, MOA-Cody acquired the Jackson Super 8, as encumbered by the Countrywide Mortgage and the Jackson Wrap Note, from Defendant RS Hospitality LLC in a tax-deferred exchange of real property pursuant to 26 U.S.C. § 1031 (the "1031 Exchange

Transaction"). Id. ¶¶ 25, 26, 29. RS Hospitality acquired The Cody as part of the 1031 Exchange Transaction.

Pursuant to an agreement of sale dated October 27, 2009 (the "Jackson Sale Agreement"), MOA-Cody, acting by its nominee RS Hospitality and with the consent of BFSC, its sole member, conveyed the Jackson Super 8 to Clear Sky, subject to the Countrywide Mortgage and the Jackson Wrap Note, for $4,175,711. See Compl. ¶¶ 39-40, 43-44; Cuiffo Decl. Ex. H, Jackson Sale Agreement, Oct. 27, 2009. The Jackson Wrap Note was to be extinguished at a cost to BFSC not to exceed $1,950,000. Compl. ¶ 45.

*The Cody*

RS Hospitality acquired The Cody from MOA-Cody as part of the 1031 Exchange Transaction in September 2008, in which, as noted above, MOA-Cody acquired the Jackson Super 8. Compl. ¶¶ 31-33. RS Hospitality executed a wrap-around note and mortgage (the "Cody Wrap Note and Mortgage") in favor of MOA-Cody in the principal amount of $8,500,000. Id. ¶ 32. The Cody Wrap Note and Mortgage is inclusive of a superior mortgage held by Kennedy Funding, Inc. (the "Kennedy Superior Mortgage"). Id. ¶ 33. The Kennedy Superior Mortgage also encumbers undeveloped land in Cody, Wyoming, which MOA-Cody conveyed to DM Development LLC ("DM Development") in November 2009. Id. ¶ 34. DM Development is not a plaintiff here or a party to the underlying Chapter 11 cases. Plaintiffs fail to explain any connection between DM Development and this case.

RS Hospitality is alleged to owe MOA-Cody more than $411,000 in interest on the Cody Wrap Note and Mortgage. Id. ¶ 36. Plaintiffs vaguely claim that "Defendants Stewart and/or Cuiffo either directly or indirectly have contacted Kennedy with the intent of purchasing the Kennedy Superior Mortgage," which would have the effect of "foreclosing and wiping out both

BFSC's equity in the Cody Wrap Note and Mortgage and DM's equity in the vacant land." Id. ¶ 37. Plaintiffs nowhere explain how DM Development's interest in vacant land in Wyoming has anything to do with Plaintiffs or their bankruptcies.

*The Ambrose*

Plaintiff A&T, of which Plaintiff Martindale is the sole shareholder, has a 20% ownership interest in Arizona & 20th LLC ("Arizona & 20th"). See id. ¶¶ 52-53. SPD Associates LP ("SPD"), in which Wallace's three children are equal partners, has a 75% interest in Arizona & 20th. Id. ¶¶ 54-55. Tripp Properties LLC ("Tripp") owns the remaining 5% of Arizona & 20th. Id. ¶ 54. Defendant Stewart's son owns Tripp Properties. Id. ¶ 59. Arizona & 20th owns The Ambrose. Id. ¶ 53. SPD, Tripp, and Arizona & 20th are not parties to the underlying Chapter 11 cases or to this adversary proceeding.

SPD acquired a 35% membership interest in Arizona & 20th from A&T on December 1, 2009. Id. ¶ 56. SPD issued a promissory note for $1,500,000 payable to A&T in ten years with an annual interest rate of 3%. Id. ¶ 57. Defendant Cuiffo allegedly represented "the Debtors" in connection with this transaction, although the only debtor that had any alleged involvement in the transaction was A&T. See id. ¶ 58.

In October 2009, Defendant Stewart loaned Plaintiff Wallace $300,000. Id. ¶ 61. The loan was secured by a pledge of 95% membership interests in Arizona & 20th and all outstanding shares of capital stock in both Martindale and BFSC. Id. ¶ 62. A&T, SPD, and Wallace became joint and several obligors on the promissory note in Stewart's favor. Id. Plaintiffs claim "[u]pon information and belief" that Stewart has threatened to enforce the promissory note and foreclose on his lien interests in Arizona & 20th. Id. ¶ 63.

**Plaintiffs' Causes of Action**

In a wonder of brevity, though no model of clarity, Plaintiffs squeeze eighteen claims into a thirty-page complaint. Unsurprisingly, the claims are vague, conclusory, and lacking in supporting detail. To the best of Defendants' ability to determine, Plaintiffs' eighteen causes of action are as follows.

*Claim I: Injunction*

This claim appears to seek to enjoin two actions by Defendants. First, it seeks to enjoin Defendants Stewart and Cuiffo's attempt, "[u]pon information and belief," to purchase the Kennedy Superior Mortgage from Kennedy Funding, Inc., which encumbers both The Cody and vacant land owned by DM Development. Allowing Stewart and Cuiffo to buy the mortgage would allegedly "foreclos[e] and wip[e] out the Debtors' equity in the Cody Wrap Note and Mortgage." Id. ¶ 71. Plaintiffs fail to make any allegation as to how purchasing the Kennedy Superior Mortgage from a third party would affect any of the plaintiffs' interests in The Cody (much less all of the plaintiffs' purported interests).

Second, Plaintiffs ask the Court to enjoin Stewart's alleged threat to foreclose on his lien on A&T's and SPD's shares in Arizona & 20th. Id. ¶¶ 72-75.

*Claim 2: Breach of the CDA, Cody, and Jackson Sale Agreements*

Plaintiffs claim that Clear Sky failed to pay the purchase price to MOA LLC for the CDA and Cody Super 8s. Id. ¶¶ 79-82. They also claim that Clear Sky failed to pay MOA-Cody for the Jackson Super 8. Id. ¶¶ 83-84. In addition to the allegedly unpaid purchase price for the three hotels, Plaintiffs (apparently all of them) allegedly are entitled to damages for lost business opportunities, lost profit, and consequential, compensatory and punitive damages. Id. ¶¶ 88-89. It is not clear whether Plaintiffs also claim breach of the Louisville Sale Agreement.

*Claim 3: Breach of the Cody Wrap Mortgage and Note*

Plaintiffs allege that RS Hospitality owes MOA-Cody $411,000 in interest on the Cody Wrap Mortgage and Note. Id. ¶ 93. This alleged failure to pay interest purportedly entitles all of the plaintiffs to damages for lost profit and compensatory, consequential, and punitive damages. Id. ¶¶ 97-98.

*Claim 4: Promissory Estoppel*

Plaintiffs allege that, in October 2009 when the sales of the CDA, Cody, Jackson, and Louisville Super 8s occurred ("the Transferred Properties"), Cuiffo was acting as counsel to Plaintiffs, and Stewart was a director of two of Plaintiffs' affiliated companies. See id. ¶¶ 51, 101. According to Plaintiffs, "Defendants promised to either return the Transferred Properties or make certain payments as required under the Sales Agreements." Id. ¶ 102. In reliance on these "representations," Plaintiffs allegedly "did not pursue alternative financing, and ultimately were induced to transfer the Transferred Properties." Id. ¶ 105.

*Claim 5: Breach of Duty of Good Faith and Fair Dealing*

Plaintiffs allege that Defendants Cuiffo and Stewart breached the implied obligations of good faith and fair dealing in the CDA, Cody, Jackson, and Louisville Sale Agreements—even though neither of those defendants are parties to any of the Sale Agreements. The basis of this claim appears to be that Cuiffo and Stewart knew that "Defendants were not going to return the Transferred Properties nor pay the purchase price as required under the Sales Agreements." Id. ¶¶ 110-111.

*Claim 6: Unjust Enrichment*

Plaintiffs allege, with no supporting detail, that "[t]he Debtors, having relied on the Defendants' false representations, did not pursue alternate strategies and were ultimately forced

to file chapter 11 petitions," id. ¶ 119, and that "Defendants retention of the benefits derived from their unjust actions . . . violates the fundamental principles of equity and good conscience," id. ¶ 120. These allegations appear to repeat the same claim made throughout the complaint: that Defendants misrepresented their intent to comply with the CDA, Cody, Jackson, and Louisville Sale Agreements.

*Claim 7: Equitable Subordination*

Plaintiffs allege that any claims that Defendants hold as creditors should be subordinated to the claims of other unsecured creditors because Defendants (apparently all of them) "breached their fiduciary duty to the Debtors by engaging in a pattern of fraudulent activity and misrepresentations by using their positions to obtain collateral for their unsecured claims against Wallace." Id. ¶ 123. The complaint fails to specify the "pattern of fraudulent activity and misrepresentations" in which all the defendants purportedly engaged.

*Claims 8, 9, and 10: Avoidance and Recovery of Fraudulent or Preferential Transfers, Obligations, and Conveyances*

In Claims 8, 9, and 10, Plaintiffs allege that the sales of the CDA, Cody, Jackson, and Louisville Super 8s were for less than equivalent value and caused Plaintiffs to become insolvent. See id. ¶¶ 132-133, 138-139 149-150. The Plaintiffs therefore claim that the properties should be recovered for the benefit of their estates under various provisions of the Bankruptcy Code. See id. ¶¶ 135, 142, 152.

*Claim 11: Legal Malpractice*

Plaintiffs allege that Defendant Cuiffo committed malpractice. See id. ¶¶ 159-160. The sole specified basis for this allegation is Cuiffo's purported failure "to communicate accurate information . . . concerning . . . the Sale Agreements and Transferred Properties." See id. ¶ 156.

*Claim 12: Accounting*

Plaintiffs demand an accounting of "the receipts and/or transfers or disbursements of the Transferred Properties." Id. ¶ 165. It appears that Plaintiffs base this claim for accounting on their allegations that Defendants' unlawfully defrauded Plaintiffs of the CDA, Cody, Jackson, and Louisville Super 8s.

*Claim 13: Breach of Fiduciary Duties*

Plaintiffs once again seek damages for Defendants' purported misrepresentations that they would either return the Transferred Properties or pay the purchase price for the properties. See id. ¶¶ 168-169. Plaintiffs seek compensatory, consequential, and punitive damages. Id. ¶ 173.

*Claim 14: Fraud and Fraudulent Misrepresentation*

Plaintiffs claim that Cuiffo represented that the "Trustee would not negotiate a settlement while Mr. Wallace was in control of the properties since [the Trustee] viewed him as the borrower due to his control of MOA Hospitality." Id. ¶ 50. Plaintiffs do not appear to claim that this statement was false. Plaintiffs allege that Cuiffo committed fraud when he "led Debtors to believe that the Defendants would return the Transferred Properties to the Debtors once Mr. Cuiffo completed negotiations with the first mortgagee and the trustee for the subordinated bonds issued by MOA Hospitality." Id. ¶ 177. Plaintiffs do not specifically allege what Cuiffo said that was false, to whom he said it, or when it was said.

*Claim 15: Determination of Extent, Validity, and Priority of Claims and Liens*

Plaintiffs ask the Court to declare that Plaintiffs have no claims or liens against "Debtors and their affiliates" due to "fraudulent and inequitable conduct." Id. ¶¶ 188-189.

*Claim 16: Conversion*

Defendants allegedly committed conversion, among the other laundry list of torts and contractual breaches, by wrongfully taking the Transferred Properties and, "upon information and belief, membership interests in the Debtors' affiliates." See id. ¶¶ 192-193.

*Claim 17: Turnover of Estate Property*

Even though Plaintiffs had no interest in three of the four Transferred Properties, Plaintiffs seek an order that the CDA, Cody, Jackson, and Louisville Super 8s are property of their estates and must be returned. See id. ¶¶ 197-199.

*Claim 18: Constructive Trust*

Finally, Plaintiffs seek a constructive trust over "all property or things of value traceable to or derived from such property," which is not specifically identified but might refer to "collateral for [Defendants'] unsecured claims against Wallace." See id. ¶¶ 202-203.

## ARGUMENT

Plaintiffs lack standing to assert the claims that belong, under state law, to entities which have not filed for bankruptcy and are not parties to this adversary proceeding. Even assuming that Plaintiffs have standing, their allegations are woefully inadequate to state any claims.

**I.  Plaintiffs Lack Standing to Assert Claims Based on the Sales of the CDA, Cody, and Louisville Super 8 Motels.**

Plaintiffs base many of their claims on the sales of the CDA, Cody, and Louisville Super 8 Motels. MOA LLC owned the CDA and Cody Super 8 Motels at the time that they were sold to Clear Sky, Compl. ¶¶ 41-42, and MOA Properties owned the Louisville Super 8 at the time it was sold to Preston Associates, id. ¶ 46. MOA LLC and MOA Properties are neither parties to the underlying Chapter 11 cases nor plaintiffs in this adversary proceeding. Indeed, prior to

Plaintiffs' bankruptcy filings, Defendant CCJ acquired 100% of the membership interests in both companies.

In asserting these claims, Plaintiffs ask this Court to ignore the reticulated structure of corporate entities that Mr. Wallace established to protect himself from personal liability and allow them to bring claims on behalf of companies multiple levels down the corporate chain. Plaintiffs cannot jettison in bankruptcy the legal distinctions that they established for their own benefit in solvency.  See Feldman v. Trs. of Beck Indus. (In re Beck Indus., Inc.), 479 F.2d 410, 418 (2d Cir. 1973) ("Where a parent corporation desires the legal benefits to be derived from organization of a subsidiary . . . , the parent must accept the legal consequences, including its inability to treat the subsidiary as its alter ego because of certain advantages that might thereby be gained.").  To hold otherwise would award Plaintiffs "a windfall merely by reason of the happenstance of bankruptcy."  Butner v. United States, 440 U.S. 48, 55 (1979) (internal quotation marks omitted).  Because Plaintiffs never had a legal right to assert claims on behalf of MOA LLC or MOA Properties, and surely cannot do so now given that any relationship to the companies has been severed, the Court should dismiss with prejudice all claims based on the sales of the CDA, Cody, and Louisville Super 8 Motels for lack of standing.

A.      **Plaintiffs Lack Standing Under Federal Law.**

Federal courts lack Article III jurisdiction unless "the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action."  Warth v. Seldin, 422 U.S. 490, 499 (1975) (internal quotation marks omitted).  The Supreme Court has also recognized a prudential limitation on the exercise of federal jurisdiction when the plaintiff "rest[s] his claim to relief on the legal rights or interests of third parties."  Id.  Plaintiffs bear the

burden to establish standing.  Hirsch v. Arthur Anderson & Co., 72 F.3d 1085, 1092 (2d Cir. 1995).

Plaintiffs' complaint runs afoul of these jurisdictional rules because the claims relating to the CDA, Cody, and Louisville Sale Agreements do not rest on any injury to themselves, but to MOA LLC and MOA Properties.  All of their claims as to these contracts allege that Defendants either failed to comply with the terms of the contracts or made tortious misrepresentations that led to the sales of the hotels.  None of the plaintiffs was a party to the contracts and none of the plaintiffs owned the hotels; thus, if anyone's rights were violated with regard to the three hotels and the contracts pursuant to which they were sold, it was the rights of third-parties MOA LLC and MOA Properties.  At most, Plaintiffs allege that they were harmed in some unspecified way as a result of alleged wrongs done to related companies.  But such "a secondary effect from harm done to [another] . . . is not the sort of injury sufficiently direct and personal [that] satisfies the case or controversy requirement of Article III."  St. Paul Fire & Marine Ins. Co. v. PepsiCo, 884 F.2d 688, 704 (2d Cir. 1989) (internal quotation marks omitted); see also Kane v. Johns-Manville Corp., 843 F.2d 636, 643 (2d Cir. 1988) ("Generally, litigants in federal court are barred from asserting the . . . rights of others in an effort to obtain relief for injury to themselves.").

Plaintiffs have not alleged any injury to themselves, nor have they based their claims on their own legal rights.  The Court should therefore dismiss for lack of jurisdiction all of Plaintiffs' claims—whether in contract or tort, at law or in equity—to the extent that they are based on the sales of the CDA, Cody, and Louisville Super 8 Motels.

### B.    Plaintiffs Lack Standing Under State Law.

When state law provides the right of action, a plaintiff must meet federal standing requirements and the standing requirements of the applicable state law.  Mid-Hudson Catskill

Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 173 (2d Cir. 2005).   Thus,

whether a debtor in a bankruptcy case has standing to sue in federal court on state-law causes of

action is a question of the federal court's jurisdiction.  See Official Comm. of Unsecured

Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 156 (2d Cir. 2003).  As

the Second Circuit has made clear, "[s]tate law determines whether a right to sue belongs to the

debtor in a bankruptcy proceeding."  Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett

Funding Grp., Inc.), 336 F.3d 94, 100 (2d Cir. 2003).  To determine Plaintiffs' standing to bring

the state-law claims that it asserts, the Court must therefore apply state law.

**1.      Plaintiffs Lack Property Rights Under State Law to Bring Contract
Claims Based on the CDA, Cody, and Louisville Sale Agreements
(Claims 2, 5).**

None of the plaintiffs has standing under applicable state law to assert a contract claim

for breach of the CDA, Cody, and Louisville Sale Agreements.  Plaintiffs make no attempt to

allege in the complaint the basis on which they bring these claims.  The only conceivable

theories, however, are that Plaintiffs: (a) are third-party beneficiaries under the contracts, (b)

have the right to bring derivative claims on behalf of MOA LLC and MOA Properties, or (c) are

entitled to pierce the corporate veils of multiple entities in their corporate chains to assert other

entities' claims.  None of these theories can support Plaintiffs' bold attempt to disregard the

corporate form.[3]

**(a)      Plaintiffs Are Not Third-Party Beneficiaries Under the Cody,
CDA, and Louisville Sale Agreements.**

The express terms of the Sale Agreements bar any argument that Plaintiffs are third-party

beneficiaries to the contracts.  The CDA and Cody Sale Agreements provide: "No party other

---

[3] The fact that Defendants are left to guess at the basis of Plaintiffs' claims is a good indication of how inadequately
those claims are pleaded.

-15-

than Seller, Purchaser and their respective successors and permitted assigns shall have any rights to enforce or rely upon this Agreement. This Agreement is binding upon and made solely for the benefit of Seller, Purchaser and their respective successors and permitted assigns." Cuiffo Decl. Ex. F, CDA Sale Agreement, Art. 12.5; id. Ex. G, Cody Sale Agreement, Art. 12.5.[4] MOA LLC was the seller on both contracts. These contractual clauses demonstrate that Plaintiffs are not third-party beneficiaries to the Cody and CDA Sale Agreements, whether the Court applies New York law, Wyoming law (the governing law selected in the CDA and Cody Sale Agreements), or Idaho law (the law of the state in which the CDA Super 8 is located). See Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009) ("A non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that 'clearly evidence[] an intent to permit enforcement by the third party' in question." (quoting Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 485 N.E.2d 208, 212 (N.Y. 1985))); Partout v. Harper, 183 P.3d 771, 775 (Idaho 2008) ("[To sue on a contract,] [t]he third party must show the contract was made primarily for his benefit; it is not sufficient that the third party is a mere incidental beneficiary to the contract."); Cordero Mining Co. v. U.S. Fid. & Guarantee Ins. Co., 67 P.3d 616, 622 (Wyo. 2003) (holding that a third party lacks standing to sue on a contract unless the parties intended it to be a direct beneficiary of the contract).

Plaintiffs also lack standing to bring a claim that Defendants breached the Louisville Sale Agreement, to the extent that Plaintiffs assert any such claim. Kentucky law provides that "the obligations arising out of a contract are due only to those with whom it is made; a contract

---

[4] The Court can consider the terms of these agreements because Plaintiffs rely on the agreements in their complaint. See Patane v. Clark, 508 F.3d 106, 111 (2d Cir. 2007) ("In assessing the legal sufficiency of a claim, the court may consider . . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." (internal quotation marks omitted)).

cannot be enforced by a person who is not a party to it or in privy with it, except under a real

party in interest statute or, under certain circumstances, by a third-party beneficiary." Presnell

Constr. Managers, Inc. v. EH Constr., LLC, 134 S.W.3d 575, 579 (Ky. 2004) (internal quotation

marks omitted). The parties to the contract must intend for a third-party beneficiary to benefit

from the contract. Id. There are no allegations here that the parties entered into the Louisville

Sales Agreement to benefit Plaintiffs.

> **(b)** **Plaintiffs Cannot Bring Derivative Claims on Behalf of MOA
> LLC or MOA Properties.**

None of the plaintiffs has the right to bring a derivative claim for breach of the CDA,

Cody, or Louisville Sale Agreements. Only Plaintiffs Wallace and Martindale are in the same

chain of ownership as MOA LLC, but both are so far removed as to make any purported

derivative claim frivolous. Wallace is a shareholder of Martindale, which in turn is a shareholder

of Broadstone, which in turn is a shareholder of MOA Hospitality, which in turn is a shareholder

of MOA Investor Corp., which was a member of MOA LLC until CCJ acquired the company in

March 2010. Thus, for Wallace to sue for breach of contracts to which MOA LLC was a party,

he would need to seek derivative status four times over. Plaintiffs are similarly removed from

direct ownership of MOA Properties. The theory that they can assert the claims of these separate

entities unsurprisingly finds no support in applicable state law.

Under New York choice-of-law rules, which apply in this bankruptcy proceeding, see

Bianco v. Erkins (In re Gaston), 243 F.3d 599, 601-02 (2d Cir. 2001), whether a shareholder of a

corporation or member of a limited liability company can bring a derivative claim on behalf of

those entities is governed by the law of the state of incorporation or organization. In re CPF

Acquisition Co., 682 N.Y.S.2d 3, 4 (App. Div. 1998). Because MOA LLC is a Delaware limited

liability company and MOA Properties is a Delaware corporation, Delaware law determines whether their shareholders or members can bring derivative claims on the entities' behalf.

To bring a derivative action under Delaware law "the plaintiff must be a member or an assignee of a limited liability company interest <u>at the time of bringing the action</u> . . . ." 6 Del. Code Ann., tit. 6, § 18-1002 (emphasis added). Plaintiffs were never members or assignees of interests in MOA LLC or MOA Properties, but they surely could not have been at the time they filed this adversary action, given CCJ's acquisition of those entities. <u>See</u> Compl. ¶ 38; Cuiffo Decl. ¶ 10.[5] Plaintiffs did not file this adversary proceeding until June 23, 2010. Thus, at the time they filed the complaint, they lacked standing under Delaware law to bring a derivative claim.

Moreover, the complaint fails to meet the procedural requirements for derivative claims under both federal and Delaware law. Federal Rule of Civil Procedure 23.1 and Federal Rule of Bankruptcy Procedure 7023.1 require the complaint, among other things: (1) to be verified; and (2) to state with particularity efforts by the plaintiffs to obtain the action that they desire from the directors, shareholders, or members of the corporation or unincorporated association or explain the reasons from not doing so. Similarly, Delaware law only permits derivative claims "if managers or members with authority to do so have refused to bring the action or if an effort to cause those managers or members to bring the action is not likely to succeed." 6 Del. Code Ann., tit. 6, § 18-1001. The complaint here is not verified and fails to make any allegations as to Plaintiffs' efforts to have MOA LLC or MOA Properties enforce their rights.

---

[5] The Court may consider declarations on a motion to dismiss for lack of jurisdiction. <u>See</u> <u>Kamen v. Am. Tel. & Tel. Co.</u>, 791 F.2d 1006, 1011 (2d Cir. 1986).

### (c)    Plaintiffs Cannot Pierce the Corporate Veil of Multiple Entities to Assert the Contract Claims.

If Plaintiffs are to rely on a veil-piercing theory, they will need to establish that a parent company or shareholder can pierce multiple corporate veils for its own benefit.  New York courts would apply Delaware law to this question because all of the entities at issue are organized under the law of Delaware.  See Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995).  Delaware law is unclear as to whether a parent or shareholder may disregard the corporate form for its own benefit, though other courts have rejected such a theory.  See Bross Utils. Serv. Corp. v. Aboubshait, 618 F. Supp. 1442, 1445 (S.D.N.Y. 1985) ("[T]he courts will not allow a parent to pierce the corporate veil it created for its own benefit, so as to assert the claims of its subsidiary.").  But even if such a veil-piercing theory is available, Plaintiffs must "plead facts supporting an inference that [Plaintiffs] . . . ha[ve] created a sham entity designed to defraud investors and creditors."  See Crosse v. BCBSD, Inc., 836 A.2d 492, 497 (Del. 2003).  Plaintiffs have not done so.

For all of these reasons, the Court should dismiss Claim 2 of the complaint with prejudice to the extent that it seeks damages for breach of the CDA Sale Agreement, the Cody Sale Agreement, and (if Plaintiffs purport to state such a claim) the Louisville Sale Agreement.  The Court should also dismiss Claim 5 of the complaint, which alleges breach of the implied duties of good faith and fair dealing, to the extent it is based on those three agreements because such a claim depends on a right to sue on the contracts.  See Kermanshah v. Kermanshah, 580 F. Supp. 2d 247, 271-72 (S.D.N.Y. 2008) (applying New York law); White v. Unigard Mut. Ins. Co., 730 P.2d 1014, 1022 (Idaho 1986); Quadrille Bus. Sys. v. Ky. Cattlemen's Ass'n, 242 S.W.3d 359, 364 (Ky. Ct. App. 2007); Wilder v. Cody Country Chamber of Commerce, 868 P.2d 211, 220 (Wyo. 1994).

2.    **Plaintiffs Lack Standing to Assert Claims in Equity or Tort Based on the CDA, Cody, and Louisville Sale Transactions (Claims 4, 6, 11-14, 16, 18).**

Plaintiffs assert various equitable and tort claims based on purportedly unlawful conduct in connection with the sales of the CDA, Cody, and Louisville Super 8 Motels: promissory estoppel, unjust enrichment, legal malpractice, accounting, breach of fiduciary duty, fraud, conversion, and constructive trust.  They also lack standing to bring these claims.

Under New York choice-of-law rules, claims sounding in equity or tort ordinarily are governed by the law of the state with the greatest connection to or interest in the transactions.[6] See Cooney v. Osgood Mach., Inc., 612 N.E.2d 277, 280 (N.Y. 1993) (noting that, in tort cases, New York applies the law of the state with the greatest interest in the issues raised in the litigation); Official Comm. of Unsecured Creditors of Hydrogen, L.L.C. v. Blomen (In re Hydrogen, L.L.C.), 431 B.R. 337, 359 (Bankr. S.D.N.Y. 2010) ("New York choice-of-law principles dictate that an interest analysis be applied to a claim sounding in equity, such as a claim for unjust enrichment.").  Some New York courts have recognized different choice-of-law rules for promissory estoppel, breach of fiduciary duty by a corporate officer, and constructive trust.  For promissory estoppel, some courts have applied the "center of gravity" test that is ordinarily applied to contract claims, see AllGood Entm't, Inc. v. Dileo Entm't & Touring, Inc., No. 09 Civ. 5377 (HB), 2010 WL 2606042, at *11 (S.D.N.Y. June 29, 2010), while others have applied the law of the state with the most significant interests in the dispute, see Nat'l Oil Well Maint. Co. v. Fortune Oil & Gas, Inc., No. 02 Civ. 7666 (LBS), 2005 WL 1123735, at *4 (S.D.N.Y. May 11, 2005).  The law of the state of incorporation applies to claims for breach of

---

[6] Under New York choice-of-law rules, the choice-of-law provisions in the CDA and Cody Sales Agreements do not reach non-contract claims.  See Fin. One Pub. Co. v. Lehman Bros. Special Fin., 414 F.3d 325, 335 (2d Cir. 2005) (holding that, under New York law, "tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract").

fiduciary duty by a corporate officer.  Hydrogen, L.L.C., 431 B.R. at 346-47.  Finally, the law of

the state in which the property is located applies on a claim for constructive trust.  Amusement

Indus., Inc. v. Stern, 693 F. Supp. 2d 327, 342 (S.D.N.Y. 2010).

Given these different choice-of-law rules and the locations of the various hotels at issue,

it is possible that the laws of Delaware, Idaho, Kentucky, New York, and Wyoming might apply

to determine Plaintiffs' standing to bring their tort and equitable claims.  Basic standing

principles of all of these states prohibit Plaintiffs' attempt to assert the claims of MOA LLC and

MOA Properties.  See Lisa, S.A. v. Mayorga, No. 2571-VCL, 2009 WL 1846308, at *6 (Del. Ch.

June 22, 2009) (holding that plaintiff who was never a shareholder of a corporation lacked

standing to sue director of the corporation for breach of fiduciary duty); Wing v. Martin, 688

P.2d 1172, 1177 (Idaho 1984) (holding that a plaintiff lacks standing to sue for harm to property

rights that belong to another person); Priestley v. Priestley, 949 S.W.2d 594, 598 (Ky. 1997)

(holding that a plaintiff must have "a judicially recognized interest in the subject matter of the

suit" (internal quotation marks omitted)); Alexander & Alexander of N.Y., Inc. v. Fritzen, 503

N.E.2d 102, 103 (N.Y. 1986) (holding that corporation lacked standing to sue for tortious

interference with an employment relationship when the employees at issue worked for a

different, though related, corporation); Haliburton Energy Servs., Inc. v. Gunter, 167 P.3d 645,

649 (Wyo. 2007) (holding that a party must have a personal stake in the litigation and have

suffered an injury to its own legally protected interest).  In addition, for the reasons stated above,

Delaware law would not permit Plaintiffs to bring derivative claims on behalf of either MOA

LLC or MOA Properties, and Plaintiffs have not complied with the procedural requirements to

bring such a claim.  See supra Section I.B.1(b).  If Plaintiffs seek to refute these contentions, they

will need to establish standing to sue on each and every claim that they assert.  See

DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 351-52 (2006) (holding that plaintiffs must establish standing as to each claim separately).

Thus, the Court should dismiss all of the tort and equitable claims that Plaintiffs assert based on the sales of the CDA, Cody, and Louisville Super 8s.

## II.     Whether or Not Plaintiffs Have Standing, the Complaint Fails to State a Claim.

Even assuming that Plaintiffs have standing to assert any of their claims, the claims fail as a matter of law or are so inadequately pleaded as to require dismissal. Most of Plaintiffs' claims, whatever their label, are based on an alleged fraud and therefore are governed by Federal Rule of Civil Procedure 9(b), which Plaintiffs do not come close to satisfying.

### A.     Plaintiffs Fail to State a "Claim" for an Injunction (Claim 1).

Plaintiffs seek an injunction to prevent: (1) Stewart and Cuiffo's purported intent to purchase the Kennedy Superior Mortgage, and (2) Stewart from foreclosing on his lien on A&T's and SPD's shares in Arizona LLC. See Compl. ¶¶ 69-71, 73. This purported claims for injunctive relief should be dismissed for a number of reasons.

First, an injunction is a remedy, not a cause of action in itself. Smith v. New Line Cinema, No. 03 Civ. 5274 (DC), 2004 WL 2049232, at *5 (S.D.N.Y. Sept. 13, 2004); Lekki Capital Corp. v. Auto. Data Processing, Inc., No. 01 Civ. 7421 (LMM), 2002 WL 987147, at *3 (S.D.N.Y. May 14, 2002); Reuben H. Donnelly Corp. v. Mark I Mktg. Corp., 893 F. Supp. 285, 293 (S.D.N.Y. 1995). Plaintiffs must plead a violation of some independent right in order to obtain an injunction. See Reuben H. Donnelly Corp., 893 F. Supp. at 293-94. The failure to do so is cause for dismissal. See Smith, 2004 WL 2049232, at *5; Reuben H. Donnelly Corp., 893 F. Supp. at 293. Plaintiffs have not pleaded any separate legal basis for an injunction, much less

the legal basis for enjoining Defendants Stewart and Cuiffo from negotiating the purchase of an asset belonging to a third party like Kennedy Funding, Inc.

Second, SPD is not a party to this action nor have Plaintiffs alleged a basis for asserting claims on behalf of SPD. Thus, Plaintiffs lack standing to seek an injunction to protect SPD. See Kane, 843 F.2d at 636.

**B.      Plaintiffs Fail to State a Claim for Promissory Estoppel (Claim 4)**

As noted above, courts in this district have applied different choice-of-law rules to claims for promissory estoppel. See AllGood Entm't, Inc., 2010 WL 2606042, at *11; Nat'l Oil Well Maint. Co., 2005 WL 1123735, at *4. Whether this Court applies an interests analysis or the "center of gravity" test, New York law would apply to Plaintiffs' claim for promissory estoppel. Plaintiffs fail to state a claim under New York law.

Under the interests analysis, which New York courts employ to determine the law that applies to tort claims, courts ordinarily apply the law of the state where the tort occurred when, as here, the issue is which state's "conduct-regulating" law applies. Brink's Ltd. v. S. African Airways, 93 F.3d 1022, 1031 (2d Cir. 1996). This Court has explained that "the basic rule under New York [law] is that [tort] claims are governed by the law of the jurisdiction where the injury is deemed to have occurred, which is usually where the plaintiff is located." Delphi Corp. v. Appaloosa Mgmt. L.P (In re Delphi Corp.), No. 05-44481 (RDD), 2008 WL 3486615, at *26 (Bankr. S.D.N.Y. Aug. 11, 2008). Under the "center of gravity" test, ordinarily used for contract claims, "courts may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." Brink's Ltd., 93 F.3d at 1031.

New York law applies under either test.  Although these transactions concerned property located outside New York, the transactions were negotiated in New York among New York parties.  Wallace, Stewart, and Cuiffo are all citizens of New York, and all of the business entities involved maintain their principal places of business in New York, even if they were organized elsewhere.  See Compl. ¶¶ 11-17; Voluntary Pet., In re A&T Corp., No. 10-22999 (May 20, 2010), ECF No. 1; Voluntary Pet., In re Ben Franklin Services Corp., No. 10-23000 (May 20, 2010), ECF No. 1; Voluntary Pet., In re Martindale Corp., No. 10-23001 (May 20, 2010), ECF No. 1; Voluntary Pet., In re MOA-Cody, L.L.C., No. 10-23002 (May 20, 2010), ECF No. 1.  Plaintiffs therefore suffered their injuries, if any, in New York.  Moreover, any promises on which Plaintiffs rely would have been made in New York.  Thus, New York both has the greatest interest in the transactions and is the "center of gravity" of the claim.

To plead promissory estoppel under New York law, the plaintiff must allege that: "(1) a speaker made a clear and unambiguous promise; (2) it was reasonable and foreseeable for the party to whom the promise was made to rely upon the promise; and (3) the person to whom the promise was made relied on the promise to his or her detriment."  Henneberry v. Sumitomo Corp. of Am., 532 F. Supp. 2d 523, 533 (S.D.N.Y. 2007).  Plaintiffs fail to plead these elements for a number of reasons.

First, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."  Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d 190, 193 (N.Y. 1987).  It is therefore "impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties."  Id.; see also

<u>All-Tech Telecom, Inc. v. Amway Corp.</u>, 174 F.3d 862, 869-70 (7th Cir. 1999) (Posner, J.) ("Promissory estoppel is not a doctrine designed to give a party . . . . a second bite at the apple in the event it fails to prove a breach of contract." (internal quotation marks omitted)).  Plaintiffs claim that they performed their obligations under the various contracts, which cover Defendants' obligation to make payments in return for possession of the hotels.

Second, if Plaintiffs' estoppel claim is not duplicative of their contract claim, it must be based on Defendants' purported misrepresentations of their intent to return the properties or pay for them, which allegedly caused Plaintiffs to sell the hotels and incur damages.  <u>See</u> Compl. ¶¶ 102-108.  This claim sounds in fraud; indeed, Plaintiffs base their fraud claim on the same allegations.  <u>See id.</u> ¶¶ 176-186.  Plaintiffs must therefore plead the circumstances of the fraud with particularity under Federal Rule of Civil Procedure 9(b) and Federal Rule of Bankruptcy Procedure 7009.  <u>See</u> <u>Rombach v. Chang</u>, 355 F.3d 164, 171 (2d Cir. 2004) (holding that Rule 9(b) applies whenever the gravamen of the claim is fraud because the language of the rule "is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud"); <u>DeBlasio v. Merrill Lynch & Co.</u>, No. 07 Civ. 318 (RJS), 2009 WL 2242605, at *9 (S.D.N.Y. Jul. 27, 2009) (holding that claims for breach of fiduciary duty, breach of contract, and unjust enrichment sounded in fraud and failed to satisfy Rule 9(b)); <u>Frota v. Prudential-Bache Secs., Inc.</u>, 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986) ("Rule 9(b) extends to all averments of fraud or mistake, whatever may be the theory of legal duty—statutory, common law, tort, contractual, or fiduciary.").

Rule 9(b) requires Plaintiffs to "(1) specify the statements that [they] contend[] were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  <u>Rombach</u>, 355 F.3d at 170 (internal quotation

marks omitted). In addition, "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d Cir. 1993). The allegations of promissory estoppel fail these tests. Plaintiffs merely assert that "Defendants" made some unspecified promise, at an unspecified time and place, that induced them to sell the hotels.

Third, even assuming that Rule 8(a) is the applicable pleading standing, <u>see</u> Fed. R. Bankr. P. 7008 (applying Rule 8(a) to adversary proceedings), Plaintiffs fail to state a "plausible" claim that they took any action in reasonable reliance on Defendants' alleged statements. <u>See</u> <u>Vaughan v. Air Line Pilots Ass'n, Int'l</u>, 604 F.3d 703, 709 (2d Cir. 2010) ("To survive a motion to dismiss, a complaint must set out only enough facts to state a claim for relief that is <u>plausible</u> on its face."). Plaintiffs claim that they sold the properties based on Defendants promises to: (1) pay them, or (2) return the properties at some unspecified point, and that, but for these promises, Plaintiffs would have "pursu[ed] alternative financing." Compl. ¶¶ 102, 105. The first of these promises is nothing more than a promise to abide by the contracts and, for the reasons stated above, cannot be a basis for promissory estoppel. The second promise provides insufficient detail to render the claim plausible for at least two reasons.

The alleged promise conflicts with Plaintiffs' allegation that the purpose of the sales was to provide them with needed capital. If Plaintiffs were looking for "financing" or capital, then how would a temporary transfer of the hotels to Defendants meet that goal? Defendants and the Court are left to guess as to the terms of such a temporary arrangement and how it would have provided Plaintiffs with the financing that they purportedly would have sought elsewhere. In addition, Plaintiffs' claim that the sales of the hotels, complete with detailed contracts and negotiations, were only for a temporary transfer and later "return" of the properties, the terms of

which were not put in writing.  Plaintiffs allege that the sale transactions were either (or maybe

both) straightforward real-estate contracts that Defendants breached or complete shams based on

an unwritten agreement to return the properties under unspecified conditions.  Plaintiffs must do

more than present such implausible and incoherent allegations to "unlock the doors of

discovery."  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

### C.    Plaintiffs Fail to State a Claim for Breach of the Duties of Good Faith and Fair Dealing (Claim 5).

Plaintiffs' claim for breach of the duties of good faith and fair dealing is inadequately

pleaded.  The basis of the claim is that Cuiffo and Stewart knew "that the Defendants were not

going to return the Transferred Properties nor pay the purchase price required under the Sale

Agreements" despite representations to the contrary.  Compl. ¶¶ 110-111.  Plaintiffs allege that

"Cuiffo's and Stewart's material misrepresentations . . . breached their duties of good faith and

fair dealing."  Id. ¶ 112 (emphasis added).  Accordingly, this claim sounds in fraud and must be

pleaded under Rule 9(b).  See DeBlasio, 2009 WL 2242605, at *9 (applying Rule 9(b) to breach

of contract).  For the reasons explained above, Plaintiffs have failed to plead the circumstances

of any fraud with particularity.

### D.    Plaintiffs Fail to State a Claim for Unjust Enrichment (Claim 6).

New York law applies to Plaintiffs' claim for unjust enrichment for the same reasons that

it applies to the promissory estoppel claim.  Under New York law, Plaintiffs must plead: (1) that

Defendants benefitted, (2) at Plaintiffs' expense, and (3) that equity and good conscience require

restitution.  Found Ventures, LLC v. F2G, Ltd., No. 08 Civ. 10066 (PKL), 2010 WL 3187294, at

*8 (S.D.N.Y. Aug. 11, 2010).  As with Plaintiffs' promissory-estoppel claim, the unjust-

enrichment claim is either based on an alleged breach of contract or fraud, neither of which can

succeed.

Plaintiffs cannot plead unjust enrichment based on violations of contracts that undisputedly exist. See Accurate Copy Serv. of Am., Inc. v. Fisk Bldg. Assocs. L.L.C., 899 N.Y.S.2d 157, 159 (App. Div. 2010) ("Dismissal of the . . . cause of action for unjust enrichment was warranted because there is an enforceable agreement between the parties."); cf Found. Ventures, 2010 WL 3187294, at *8 (holding that claims for breach of contract and unjust enrichment can be pleaded together "where there is a dispute regarding the existence of a valid contract"). Because Plaintiffs also plead breach of contract and do not allege a dispute as to the existence of any of the sale agreements, they cannot pursue an unjust-enrichment claim.

In addition, to the extent that Plaintiffs' unjust-enrichment claim is based on alleged misrepresentations, it sounds in fraud and therefore must meet Rule 9(b)'s requirements. See DeBlasio, 2009 WL 2242605, at *9 (applying Rule 9(b) to claim for unjust enrichment). Plaintiffs claim that they "relied on Defendants' false representations," which caused them to sell the hotels to their detriment and Defendants' gain, Compl. ¶¶ 119-120, without specifying the content of the misrepresentations, who said them, or when they were said. This claim should also be dismissed for failure to plead fraud with particularity.

### E. Plaintiffs Fail to State a Claim for Equitable Subordination (Claim 7).

To state a claim for equitable subordination, Plaintiffs must sufficiently plead that Defendants engaged in inequitable conduct such as: "(i) fraud, illegality, or breach of fiduciary or other legally recognized duties; (ii) undercapitalization of the debtor; [or] (iii) control or use of the debtor as a mere instrumentality or alter ego to benefit another." Hydrogen, L.L.C., 431 B.R. at 361. Plaintiffs have failed to do so for two reasons.

First, the purported inequitable conduct on which Plaintiffs rely is the "pattern of fraudulent activity and misrepresentations." Compl. ¶ 123. Accordingly, the circumstances of

the fraud must be stated with particularity.  See O'Connell v. Arthur Anderson LLP (In re AlphaStar Ins. Grp. Ltd.), 383 B.R. 231, 276-77 (Bankr. S.D.N.Y. 2008) (dismissing equitable-subordination claim based on alleged fraud for failure to comply with Rule 9(b)).  Plaintiffs fail to detail who made the fraudulent statements, when and where they were made, and how they were false.  They therefore have not pleaded fraud with particularity.  See Rombach, 355 F.3d at 170.

Second, because, as explained throughout this brief, Plaintiffs fail to state a claim for fraud, breach of fiduciary duty, or malpractice, their equitable-subordination claim also fails. See Hydrogen, L.L.C., 431 B.R. at 631 (holding that previously dismissed claims for breach of fiduciary duty and unjust enrichment could not be used to support claim for equitable subordination).

### F. Plaintiffs Fail to State a Claim for Fraudulent Transfer or Conveyance, Preferential Transfer, or Turnover of Estate Property (Claims 8-10, 17).

Plaintiffs seek to avoid the sales of the CDA, Cody, Jackson, and Louisville Super 8s and have the properties turned over to them pursuant to Bankruptcy Code Sections 541, 542, 544(b), 547, 548(a), 550(a), and New York Debtor and Creditor Law Section 273.  These claims fail because: (1) the CDA, Cody, and Louisville Super 8s are not property of Plaintiffs' estates, and (2) the allegations are conclusory and insufficient to state a claim.

#### 1. Relevant Statutory Provisions

Plaintiffs' blunderbuss approach to pleading requires Defendants to set out the various provisions of the Bankruptcy Code that purportedly entitle Plaintiffs to relief.

Section 541 provides that the debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  Pursuant to Section 542, "an entity . . . in possession, custody, or control, during the case, of property that the

trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property." Id. § 542(a) . Section 363 permits a trustee to use, sell, or lease "property of the estate" unless certain exceptions apply. Id. § 363(b)(1). Section 1107 provides that a debtor-in-possession can exercise all of the rights granted to a trustee. Id. § 1107.

Section 544(b) allows a trustee or debtor-in-possession to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." Id. § 544(b)(1). New York Creditor and Debtor Law Section 273, which Plaintiffs' claim is the "applicable law" here, states: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." N.Y. Debt. & Cred. Law § 273.

Section 547 permits a trustee or debtor-in-possession to avoid the transfer "of an interest of the debtor in property": (1) to a creditor; (2) for a debt owed by the debtor before the transfer; (3) made while the debtor was insolvent; (4) made within 90 days before the filing of the bankruptcy petition or within one year before the filing if the creditor was an insider; and (5) that enabled the creditor to receive more than it would have received if the case were brought under Chapter 7, if the transfer were not made, and if the creditor received payment for the debt under Chapter 11. 11 U.S.C. § 547(b)(1)-(5).

Under Section 548, the trustee or debtor-in-possession may avoid any transfer "of an interest of the debtor in property" made within two years before the filing of the petition if the debtor, among other things, "received less than a reasonably equivalent value in exchange for

such transfer" and was either insolvent on the date of transfer or became insolvent as a result of the transfer. Id. § 548(a).

Section 550(a) provides that if a transfer is avoided under sections 544, 547, or 548, a trustee or debtor-in-possession can recover the property or the value of the property. Id. § 550(a).

## 2.   Property of the Estates

To succeed on any of their claims that the properties were fraudulently transferred and should be turned over to them, Plaintiffs must show that the property at issue is property of their estates. See 11 U.S.C. § 542 (providing, by incorporation of § 363, the right to recover "property of the estate"); id. § 544(b) (permitting avoidance of any transfer "of an interest of the debtor in property" that is voidable under applicable law); id. § 547(b)(1) (permitting avoidance of a transfer "of an interest of the debtor in property"); id. § 548(a) (same); id. § 550(a) (permitting recovery of property, the transfer of which was avoided). "Whether the debtor has a legal or equitable interest in property such that it becomes 'property of the estate' under section 541 is determined by applicable state law." Musso v. Ostashko, 468 F.3d 99, 105 (2d Cir. 2006). Thus, Plaintiffs cannot use their bankruptcy filings to enlarge their property rights under state law. For the reasons described above, Plaintiffs lack standing under state law to assert any claims based on the CDA, Cody, and Louisville Sale Agreements. Any such claims, therefore, are not property of their bankruptcy estates. Plaintiffs have failed to state a claim to the extent that they seek to recover the CDA, Cody, and Louisville Super 8s and any property derived from those hotels.

### 3. Pleading Requirements

Plaintiffs bankruptcy claims should all be dismissed for failure to state a claim because they merely assert legal conclusions without supporting facts. The Supreme Court has made clear that plaintiffs must do more than state "'labels and conclusions'," "'a formulaic recitation of the elements of a cause of action,'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 129 S. Ct. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)). The complaint must, instead, contain facts allowing "the court to infer more than the mere possibility of misconduct." Id. at 1950. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. at 1949.

Plaintiffs anemic efforts fall far short of these requirements. Claim 8 consists of eight paragraphs, each of which consists of a single conclusory sentence. Pursuant to Bankruptcy Code Section 548, Plaintiffs are required to plead that they were insolvent on the date of the allegedly fraudulent transfers or that they became insolvent as a result of the transfers. See 11 U.S.C. § 548(a)(1)(B)(ii). Rather than plead some facts from which it might plausibly be inferred that the transfers of the hotels led to Plaintiffs' insolvency, Plaintiffs simply state that "[t]he Debtors became insolvent as a result of the transfer of the Transferred Properties, individually or collectively." Compl. ¶ 133. The only other allegation in the complaint that bears on Plaintiffs' insolvency is the similarly conclusory allegation that Plaintiffs' reliance on Defendants' representations "forced [Plaintiffs] into a position where they ultimately were left without adequate funds to conduct their businesses." Id. ¶ 106. These bare recitations of the statutory elements do not satisfy Rule 8(a) .

Plaintiffs fare no better with Claim 9. This claim consists of seven sentences that parrot Section 544(b). New York Debtor and Creditor Law Section 273 requires Plaintiffs to allege that the "conveyance[s] were made . . . by a person who is or will be thereby rendered insolvent." Plaintiffs merely say that they "were rendered insolvent as a result of the transfers of the Transferred Properties." Compl. ¶ 138. Again, the facts in the complaint do not show a plausible basis to conclude that the sales of the properties caused Plaintiffs' insolvency.

Claim 10 is similarly deficient. To avoid a transfer under Section 547(b), Plaintiffs must allege and prove that the transfers of the debtor's property were: (1) to a creditor; (2) for a debt owed by the debtor before the transfer; (3) made while the debtor was insolvent; (4) made within 90 days before the filing of the bankruptcy petition or within one year before the filing if the creditor was an insider; and (5) that the transfer enabled the creditor to receive more than it would have received if the case were brought under Chapter 7, if the transfer were not made, and if the creditor received payment for the debt under Chapter 11. 11 U.S.C. § 547(b)(1)-(5). Plaintiffs simply repeat each of these requirements, with one exception. See Compl. ¶¶ 143-149. Instead of pleading that the sales were "made while the debtor was insolvent," 11 U.S.C. § 547(b)(3), Plaintiffs state that the sales "rendered the Debtors insolvent," Compl. ¶ 149. Although Plaintiffs purport to incorporate the preceding paragraphs of the complaint into Claim 10, the rest of the complaint contains no facts to create a plausible claim that Plaintiffs were insolvent at the time of the sales or that the purchasers were creditors who, through the sales, received more than they would have during the bankruptcy process. Both the unsupported repetition of statutory elements and the failure correctly to plead a required element demand dismissal of Claim 10.

For all of these reasons, the Court should dismiss Claims 8, 9, 10, and 17.

### G.    Plaintiffs Fail to State a Claim for Legal Malpractice (Claim 11).

Plaintiffs allege that Defendant Cuiffo committed malpractice by failing "to communicate accurate information when making representations to the Debtors concerning, <u>inter alia</u>, the Sale Agreements and Transferred Properties."  Compl. ¶ 156.  This claim fails because Plaintiffs do not adequately allege: (1) the circumstances of the alleged misrepresentations on which the malpractice is based, and (2) that Cuiffo's purported breach of duty caused them damages.

First, like most of Plaintiffs' other claims, this claim is based on the allegation that Cuiffo made fraudulent misrepresentations or omissions concerning Defendants' intent to comply with the Sale Agreements or return the properties to Plaintiffs.  The claim must therefore meet Rule 9(b)'s pleading requirements.  For the reasons stated above, the allegations are far short of the mark.

Second, Plaintiffs have failed to plead all of the necessary elements of malpractice.  New York law applies to Plaintiffs' claim that Defendant Cuiffo committed malpractice because Plaintiffs, who are all located in New York, suffered the alleged harm there.  <u>See</u> <u>Delphi Corp.</u>, 2008 WL 3486615, at *26 (holding that law of state where plaintiff is located ordinarily applies to fraud claims).  Plaintiffs must allege "that the attorney 'failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession' and that the attorney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages."  <u>Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer</u>, 867 N.E.2d 385, 387 (N.Y. 2007) (quoting <u>McCoy v. Feinman</u>, 785 N.E.2d 714, 718 (N.Y. 2002)).  "To establish causation, a plaintiff must show that he or she . . . would not have incurred any damages, but for the lawyer's negligence."  <u>Id.</u>  Plaintiffs do not adequately allege that Cuiffo's actions caused them damages.

Plaintiffs' malpractice theory appears to be that Cuiffo represented them (apparently, all of them) in connection with the sales of the hotels, but made fraudulent misrepresentations concerning the purchasers intent to comply with the agreements or return the properties. To plead that this purported malpractice caused their damages, Plaintiffs must do more than state unsupported conclusions and repeat the elements of the claim. See Iqbal, 129 S. Ct. at 1951. Plaintiffs instead rely on the naked averments that Cuiffo represented all of them in connection with all of the transactions, "Cuiffo's breaches caused significant damage to the Plaintiffs," and "[t]he damages sustained by Plaintiffs referred to herein were caused solely by the negligence of Defendant Cuiffo without any negligence or fault on the part of Plaintiffs contributing thereto." Compl. ¶¶ 154, 158-159. Although Plaintiffs again incorporate by reference the other allegations in the complaint, nowhere do they plead facts showing that Cuiffo's misrepresentations caused them to enter into the sales transactions and incur damages. Indeed, the complaint does not allege the substance of any such misrepresentations.

### H.     Plaintiffs Fail to State a Claim for an Accounting (Claim 12).

The accounting claim is governed by New York law as the law of the jurisdiction with the greatest interest in the transactions. See Hydrogen, L.L.C., 431 B.R. at 359 (applying interest analysis under New York choice-of-law rules to equitable claims). Under New York law, "accounting is a distinct cause of action rooted in equity." DiTolla v. Doral Dental IPA of N.Y., LLC, 469 F.3d 271, 275 (2d Cir. 2006). Because Plaintiffs base their claim for an accounting on Defendants' allegedly unlawful possession of "the Transferred Properties," Compl. ¶¶ 163-165, and they have failed to state a claim that Defendants unlawfully acquired the hotels, the Court should dismiss the accounting claim.

# I.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duties (Claim 13).

To the extent that this claim is against Cuiffo in his purported capacity as Plaintiffs'

counsel, New York law applies for the same reason that it applies to the malpractice claim.  But

Pennsylvania and Delaware law govern the claim that Stewart breached his fiduciary duties as

director of Broadstone (a Pennsylvania corporation) and MOA Hospitality (a Delaware

corporation), which are alleged to be "affiliates of the Debtors."  See id. ¶¶ 21, 169; Hydrogen,

L.L.C., 431 B.R. at 346-47 (holding that the law of the state of incorporation governs claims for

breach of fiduciary duties to a corporation).  Plaintiffs have not stated a claim under applicable

state law.

First, the claim should be dismissed against Cuiffo because it is duplicative of the claim

that he committed malpractice.  See Rocky City Sound, Inc. v. Bashian & Farber, LLP, 903

N.Y.S.2d 517, 520 (App. Div. 2010).  Both claims seek damages for Cuiffo's alleged violation of

his duties as counsel to Plaintiffs by misrepresenting facts about the sale agreements.  Compare

Compl. ¶ 156 (alleging that Cuiffo committed malpractice by breaching his duty to communicate

accurate information to Plaintiffs), and id. ¶ 161 (seeking over $5 million in damages on the

malpractice claim), with id. ¶ 168 (alleging that Cuiffo breached his fiduciary duties by

representing Debtors in the sales transactions despite knowing that Defendants "were not going

to return the Transferred Properties nor pay the purchase price"), and id. ¶ 173 (seeking damages

for breach of fiduciary duties).  The Second Circuit has recognized that, under New York

substantive law, a "breach of fiduciary duty claim . . . combined . . . with [a] legal malpractice

claim must be dismissed [if it is] duplicative of the malpractice claim."  Nordwind v. Rowland,

584 F.3d 420, 432 (2d Cir. 2009).  Because the malpractice and fiduciary-duty claims are based

on the same facts and seek the same relief, the fiduciary-duty claim against Cuiffo should be dismissed.  See id. at 433-34.

Second, the claim should be dismissed against Stewart because he owned no fiduciary duties to Plaintiffs by virtue of his position as director of Broadstone and MOA Hospitality. Plaintiffs claim that Stewart breached fiduciary duties to them when he failed to disclose, or perhaps made misrepresentations about, Clear Sky's and Preston Associates' intent to pay for the hotels or return them to MOA LLC, MOA Properties, and MOA-Cody.  See Compl. ¶ 169. However, Stewart was not a director of any of the plaintiffs, only of Broadstone and MOA Hospitality, and neither of these companies was a party to the sale transactions.  See id. ¶¶ 21. While Plaintiff Martindale is a shareholder of Broadstone, none of the other plaintiffs are shareholders of either Broadstone or MOA Hospitality.  See Cuiffo Decl. Ex. A.   On these facts, Stewart owed no fiduciary duties to Plaintiffs.

As both Delaware and Pennsylvania law recognize, affiliated corporations have separate legal personalities.  Therefore, Stewart's roles as a director of Broadstone and MOA Hospitality does not establish any fiduciary duties as to other "affiliated" companies.  See Trenwick Am. Litig. Trust v. Ernst & Young L.L.P., 906 A.2d 168, 191 (Del. Ch. 2006) (holding that director of parent corporation owes no fiduciary duties to subsidiary); Commonwealth ex rel. Corbett v. Citizens Alliance for Better Neighborhoods, Inc., 983 A.2d 1274, 1281 (Pa. Commw. Ct. 2009) (dismissing claim against defendant who was neither director nor officer of corporation and against whom plaintiff pleaded no facts demonstrating de facto control over the corporation). Even though Martindale was a shareholder of Broadstone, Martindale was not a party to any of the transactions that Plaintiffs claim were fraudulent or improper.  Thus, Plaintiffs have not alleged that any purportedly improper act caused Martindale damages, a necessary element of

their claim.  See Latuszewski v. Valic Fin. Advisors, Inc., 2007 WL 4462739, at *18 (W.D. Pa.

Dec. 19, 2007) (holding that, under Pennsylvania law, plaintiff must prove that breach of

fiduciary duty caused damages to the principal).

Third, for the reasons explained above, the claim should be dismissed against Cuiffo and

Stewart because the complaint does not sufficiently allege the circumstances of the purported

fraudulent misrepresentations on which it is based.

**J.      Plaintiffs Fail to State a Claim for Fraud (Claim 14).**

As Defendants have already made clear, Plaintiffs' fraud claim cannot meet the

heightened pleading standard of Rule 9(b).  Instead of alleging with particularity the fraudulent

statements, who made them, where and when they were made, and why the statements were

fraudulent, see Rombach, 355 F.3d at 170, Plaintiffs rely on such general and conclusory

statements as "Cuiffo led Debtors to believe that the Defendants would return the Transferred

Properties to the Debtors once Mr. Cuiffo completed negotiations with the first mortgagee and

the trustee."  Compl. ¶ 177.  Plaintiffs never explain what Cuiffo said that was misleading or

provide any other details of the allegedly fraudulent statements.  In addition, although Plaintiffs

claim that "Defendants" are liable for the fraud, they never explain what role each defendant

purportedly played in the fraud.  See Mills, 12 F.3d at 1175.  Accordingly, the Court should

dismiss the fraud claim.

**K.      Plaintiffs Fail to State a Claim for an Order Declaring that Defendants Have
         No Claims or Liens Against Plaintiffs' or Their Affiliates' Property (Claim
         15).**

Plaintiffs request for an order declaring that Defendants lack claims or liens against

Plaintiffs' or their affiliates' property fails for a number of reasons.  First, the Court can disallow

claims "of any entity from which property is recoverable under" various sections of the

Bankruptcy Code. 11 U.S.C. § 502(d). As demonstrated above, however, Plaintiffs have not established a valid claim that any property in Defendants' possession is recoverable for Plaintiffs' estates. Second, Plaintiffs lack standing to seek a declaration that Defendants have no interest in property that belongs to Plaintiffs' affiliates and not Plaintiffs. See supra Section I. Third, Plaintiffs base this claim on Defendants' allegedly "fraudulent and inequitable conduct," Compl. ¶ 188, but do not sufficiently plead fraud under Rule 9(b). As with Plaintiffs' other claims, Plaintiffs merely rely on conclusory statements that Defendants engaged in fraud without pleading the circumstances of the fraud with the required particularity.

**L.      Plaintiffs Fail to State a Claim for Conversion (Claim 16).**

Plaintiffs also have not stated a claim for conversion. Conversion occurs under New York law "when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." Colavito v. N.Y. Organ Donor Network, Inc., 860 N.E.2d 713, 717 (N.Y. 2006) (emphasis added). "An action sounding in conversion does not lie where the property involved is real property." Garelick v. Carmel, 529 N.Y.S.2d 126, 128 (2d Dep't 1988). In addition, a conversion claim based on alleged fraud must be pleaded pursuant to Rule 9(b). See Rombach, 355 F.3d at 171.

Here, Plaintiffs claim that "Defendants have wrongly taken and converted for their own use the Transferred Properties and, upon information and belief, membership interests in the Debtors' affiliates." Compl. ¶ 192. Plaintiffs cannot claim that the Transferred Properties have been converted because real property cannot be the basis of a conversion claim. Garelick, 529 N.Y.S.2d at 128. Plaintiffs also cannot base conversion on "membership interests" in their affiliates (even assuming that such membership interests constitute personal property) because:

(1) for all of the reasons stated in Section I, they lack standing to bring a claim for harm allegedly done to separate entities; and (2) they have not sufficiently pleaded the wrongful taking of any such membership interests. The complaint merely alleges that "Defendants Cuiffo, Stewart and CCJ have acquired from US Bank, as trustee, the MOA Hospitality shares in MOA LLC and M.O.A. Properties, LLC," Compl. ¶ 38, without providing any basis for a claim that the purchase was wrongful. Moreover, the conversion claim appears to be based on the same alleged fraud as Plaintiffs' other tort claims and does not meet the Rule 9(b) standard.

**M.      Plaintiffs Fail to State a Claim for Constructive Trust (Claim 18).**

Plaintiffs claim for a constructive trust is also inadequate. This claim is again based on Defendants' purported "pattern of fraudulent activity and misrepresentations," id. ¶ 202, and fails under Rule 9(b) for the reasons previously stated.

**N.      Plaintiffs Fail to State Any Claims Against BSC Properties, Inc., CCJ, or Preston.**

All claims against Defendants BSC Properties, Inc. ("BSC"), CCJ, and Preston should be dismissed because Plaintiffs fail to state any claims against these defendants. The only allegation as to BSC in the complaint is that it is a New York corporation. Compl. ¶ 11. Plaintiffs do not allege BSC's role in the case or why it should be held responsible on any of their numerous causes of action. BSC is not alleged to have taken any tortious act or breached any duty to Plaintiffs. All claims against it should therefore be dismissed.

The complaint similarly fails to allege any action attributable to CCJ, other than the acquisition of MOA Hospitality's shares in MOA LLC and MOA Properties. Compl. ¶ 38. Plaintiffs make a half-hearted attempt to claim that those shares were "wrongly taken and converted," id. ¶ 191, but they offer no facts to show how the purchase of those assets from the Trustee (who acquired them as a result of the court-approved Settlement and Forbearance

Agreement with MOA Hospitality, see Cuiffo Decl. Ex. C, Settlement and Forbearance Agreement ¶ 5; id. Ex. D, Order for Judgment and Consent at 3-4), amounted to conversion. Plaintiffs have therefore not stated any claims against CCJ, and it should be dismissed from the case.

Finally, all of Plaintiffs' claims against Preston are based on the sale of the Louisville Super 8. See Compl. ¶ 46. Because Plaintiffs have no standing to assert those claims, see supra Section I, they are left without any causes of action against Preston. Therefore, Preston should be dismissed from the case.

## CONCLUSION

To summarize the numerous defects in Plaintiffs' complaint:

- Plaintiffs lack standing to bring claims based on the sales of the CDA, Cody, and Louisville Super 8 Motels;

- Plaintiffs have not alleged a basis for an injunction;

- Plaintiffs cannot state a claim for promissory estoppel because they allege the existence of enforceable contracts governing the dispute between the parties;

- the claims for promissory estoppel, breach of the duties of good faith and fair dealing, unjust enrichment, equitable subordination, legal malpractice, breach of fiduciary duty, fraud, a declaration that Defendants have no liens against Plaintiffs or their affiliates, conversion, and constructive trust are all based on a purported fraud, which Plaintiffs fail to plead with particularity;

- the claims for promissory estoppel, fraudulent transfer, preferential transfer, turnover of estate property, legal malpractice, and conversion are inadequately pleaded under Rule 8(a);

- the claim for unjust enrichment is improperly based on contracts that Plaintiffs allege exist between the parties;

- Plaintiffs fail to state a claim for fraudulent transfer, preferential transfer, and turnover of estate property to the extent that these claims are based on property that does not fall within Plaintiffs' estates;

- Plaintiffs have failed to plead wrongful conduct on which to base the claims for equitable subordination, accounting, and a declaration that Defendants have no liens against Plaintiffs or their affiliates;

- the claim for breach of fiduciary duty against Defendant Cuiffo is duplicative of the legal malpractice claim, and Plaintiffs have not alleged any fiduciary duty owed to them by Defendant Stewart;

- conversion cannot be based on the taking of real property; and

- Plaintiffs have not stated any claims against Defendants BSC, CCJ, or Preston Associates.

For the foregoing reasons, the Court should dismiss the complaint. Dismissal should be with prejudice as to all claims based on the sales of the CDA, Cody, and Louisville Super 8 Motels.

Dated: New York, New York
 September 10, 2010

Respectfully submitted,

VENABLE LLP

By: /s/Edward A. Smith

 Edward A. Smith
 Lawrence H. Cooke II
 David N. Cinotti
 Rockefeller Center
 1270 Avenue of the Americas, 25th Floor
 New York, New York 10020
 Telephone: (212) 307-5500
 Facsimile: (212) 307-5598
 lhcooke@venable.com
 easmith@venable.com
 dncinotti@venable.com

 Counsel for Defendants